**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | |
|---|---|
| NOAH ROMO, | CASE NO. 3:20-CV-01557-JGC |
| Plaintiff, | JUDGE JAMES G. CARR |
| | UNITED STATES DISTRICT JUDGE |
| v. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | CARMEN E. HENDERSON |
| Defendant, | **REPORT & RECOMMENDATION** |

## I. Introduction

Plaintiff, Noah Romo ("Romo" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On February 3, 2017, Claimant filed an application for SSI, alleging a disability onset date of February 10, 2015. (ECF No. 12, PageID #: 335). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 235). On August 2, 2018, the ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 120-156). On June 11, 2019, the ALJ held a supplemental hearing, during which

1

Claimant, again represented by counsel, and a second impartial vocational expert testified. (ECF No. 12, PageID #: 157-185). On July 19, 2019, the ALJ issued a written decision finding that Claimant was not disabled. (ECF No. 12, PageID #: 83). The ALJ's decision became final on May 4, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 77).

On July 15, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13 & 16). Claimant asserts the following assignment of error:

> The ALJ's decision should be reversed because the ALJ failed to properly account for the credited limitations articulated by the state agency psychologists, and improperly discredited the opinions of the only examining psychologist of record.

(ECF No. 13 at 2). Claimant does not challenge the ALJ's physical RFC finding. Accordingly, this report and recommendation addresses only Claimant's challenges to the ALJ's determinations regarding his mental RFC.

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing and supplemental hearing:

> The claimant alleged that he is disabled due to Bell's palsy, asthma, depression, fibromyalgia, agoraphobia, type II diabetes, a vitamin D deficiency, chronic pain in both knees, insomnia, hyperlipidemia, hypertension, MRSA infection, anxiety, PTSD, and a learning disability with difficulty reading and writing (3E, 4E). At the hearing on August 2, 2018, the claimant testified that he cannot work because he has chronic pain in both knees that limits his ability to bend and walk; fibromyalgia; Bell's palsy causing loss of sight in his left eye; difficulty breathing due to asthma; and psychological symptoms. [ ].
>
> The claimant further testified that he takes medications for depression and anxiety, and sees a counselor. He said he has

2

memory problems, and tends to forget to take his medications, so he needs constant reminders. He indicated he avoids family functions because he becomes nervous and jittery, and that conflict or confrontations upset him. He said he has difficulty sleeping and a variable appetite, and that he is unable to get out of bed due to depressive symptoms about four or five times per month. He indicated his medications help, but they make him very sleepy and dizzy. The claimant testified that he received special education services due to difficulty with math, reading and writing. He said he can print, and sign his name, but he cannot read cursive writing. He testified that he has never had a driver's license, because he cannot understand the manual and cannot see very well.

With regard to his activities, the claimant testified that his family reminds him to brush his teeth and shower. He said he sleeps in the living room rather than going upstairs, due to his knee pain. He said he takes laundry to the washroom, puts it in the dryer and helps put the clothes away, but he does not run the washing machine because he has ruined clothes in the past. He said his brother helps him shop and selects items for him because he cannot understand the prices and he becomes nervous when he is away from home. The claimant testified that he enjoys playing video games and reading comic books. He said he does not play games online or use the computer. He said he has a smart phone, but he uses it only for emergencies and does not access the internet.

At the supplemental hearing on June 11, 2019, the claimant testified that his diabetes is worsening and his neuropathy is spreading. He said his depression is also worsening and he stays in bed more often. He indicated he finds nothing enjoyable. He said he is seeing a counselor two or three times per month, and takes several medications for anxiety and depression, but sometimes his symptoms are more than the medication can help.

(ECF No. 12, PageID #: 95-96).

## B. Relevant Medical Evidence[1]

The ALJ also summarized Claimant's mental health records and symptoms:

Turning to the claimant's mental impairments, his school records

---

[1] Due to the limited scope of Claimant's appeal, the Court finds the excerpt of the ALJ's summary of facts sufficient here. This summary is not meant to be exhaustive. Additional facts are included in the analysis when necessary.

show he qualified for special education services under an Individualized Education Program (IEP) (13E). When tested as a child, his IQ score was in the low average range (Id., at 56). However, in the 12th grade, he was reading and doing math at the third-grade level (Id., at 5). His poor attendance was noted to be a major factor in his lack of progress, as well as not attempting to complete his classwork and not doing makeup work when absent (Id.). He was provided with accommodations and intervention services (13E). The claimant [ ] graduated from high school in 2006 with a special education diploma (3F). The undersigned has considered his history of a learning disorder and his testimony in finding he cannot perform more than simple, routine and repetitive tasks, with additional limitations on work pace, decisions and changes, and that he is limited to jobs that do not require any reading of cursive writing.

The claimant was diagnosed with depression and anxiety prior to the time at issue (2F/4). In late 2016, he reported a slight increase in his symptoms because he had been off his medications, but he indicated he was sleeping "okay" without them (Id., at 1, 2). He was prescribed buspirone, bupropion and citalopram (Id., at 4-5). He was additionally prescribed trazodone and hydroxyzine by his primary care provider in March of 2017 (Id., at 22, 23). He indicated the medications were only temporarily helpful (4F/14).

The claimant sought treatment at a counseling center in February of 2017 (4F). He reported multiple symptoms of anxiety and depression (Id., at 7). Upon a psychiatric evaluation on March 7, 2017, he had an anxious mood and affect, but clear speech, logical thoughts and no signs of psychosis (Id., at 15). He was attentive and demonstrated adequate memory, but he refused to spell or perform simple math without a calculator. He was diagnosed with a depressive disorder, anxiety disorder and learning disability. His medications were adjusted. (Id.). The claimant also began undergoing counseling (4F). He described ongoing irritability, sleep difficulties, isolation and fear of interacting with others (Id., at 16). As of May of 2017, the claimant reported that his medications were controlling his depression and anxiety, and he had not had a panic attack in a long time (5F/27). His mood, affect, speech, behavior, judgment, thought content, cognition and memory were normal upon a mental status examination by his primary care provider, and he was described as attentive (Id., at 28).

In July of 2017, the claimant presented as upbeat and positive, with fairly well -regulated thought processes, and his anxiety was still

4

under control (6F/12). He had normal psychomotor movements, and no signs of psychosis or a thought disorder. His recent and remote memory were "quite good," and he was focused in his thinking. (Id.). He continued to undergo counseling throughout 2017 and 2018 (6F, 10F, 17F). He reported increased symptoms in late 2018, but they were attributed to external stressors such as a decline in his mother's health and the impending holiday season (17F). As of February of 2019, he had a normal mood, affect, behavior, judgment and thought content upon a mental status examination by his primary care provider, and in March of 2019, he denied having depression, anxiety, tension, memory loss or difficulty sleeping to his podiatrist (18F/36, 39).

[ ]

No treating psychiatrist, psychologist, psychotherapist or mental health counselor has indicated the claimant is unable to work due to his mental impairments, during the time at issue in this claim.

(ECF No. 12, PageID #: 98-99). Additionally, the ALJ summarized Claimant's consultative psychological examination with Dr. Brian R. Griffiths:

On September 27, 2018, the claimant underwent a post-hearing consultative psychological examination by Brian R. Griffiths, Psy.D. (15F). The claimant reported a long history of depression, and anxiety with a history of panic attacks. He indicated the attacks improved with medication, but he continued to have multiple depressive symptoms. He described difficulty with his memory and concentration. He had an anxious and depressed mood, and a flat affect. His speech was not pressured or slowed, and reflected normal thought processes, but suggested intellectual limitations. He bounced his leg during the examination, but showed no other outward signs of anxiety, and no signs of psychosis. He was alert and responsive, and he was fully oriented and not confused. His insight and judgment appeared sufficient. Upon a cognitive evaluation, he had some difficulty with his memory and problems doing math. Dr. Griffiths diagnosed a major depressive disorder, unspecified anxiety disorder, unspecified trauma and stressor-related disorder, and estimated borderline intellectual functioning. (Id.).

With regard to the four broad areas of work-related mental functioning, Dr. Griffiths indicated the claimant understood and followed simple directions, but performed marginally on short-term memory testing (15F). He noted the claimant was able to

follow the conversation, but had difficulty performing tasks requiring attention and concentration, and that he demonstrated an adequate pace, but may have problems keeping up with others. He observed that the claimant interacted appropriately, yet reported social withdrawal. He indicated that stressful situations would increase the claimant's symptoms and probably cause him to respond to workplace stressors through emotional rather than cognitive channels. Dr. Griffiths also completed a form indicating the claimant has mild limitations in understanding, remembering and carrying out simple instructions and making judgments on simple work-related decisions, but marked limitations in understanding, remembering and carrying out complex instructions and making complex decisions; moderate limitations in interacting appropriately with the public, supervisors and coworkers; and a marked limitation in responding appropriately to usual work situations and changes in a routine work setting. He noted the claimant has impaired attention and concentration, and decreased task persistence and pace. (Id.).

(ECF No. 12, PageID #: 99-100).

### C. Opinion Evidence at Issue

#### 1. State Agency Reviewing Psychologists

On March 23, 2017, State Agency reviewing psychologist Carl Tishler, Ph.D., reviewed Claimant's records. Dr. Tishler opined that Claimant was moderately limited in his abilities to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (ECF No. 12, Page ID #: 190). Dr. Tishler further opined that Claimant can understand and remember simple routine task instructions (ECF No. 12, PageID #: 193) and can carry out simple repetitive tasks (ECF No. 12, PageID #: 194). With respect to Claimant's social limitations, Dr. Tishler stated that Claimant can engage in superficial social interactions. (ECF No. 12, PageID #: 194). With respect to Claimant's ability to adapt or manage himself, Dr. Delcour explained that Claimant can adjust to static work duties. (ECF No. 12, PageID #: 194).

On April 12, 2017, State Agency reviewing psychologist Karla Delcour, Ph.D., reviewed

6

Claimant's records upon reconsideration. Dr. Delcour opined that Claimant was moderately limited in his abilities to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (ECF No. 12, Page ID #: 203-204). Dr. Delcour further opined that Claimant can understand and remember simple routine task instructions (ECF No. 12, PageID #: 207) and retains the ability to perform duties that are static and for which changes can be easily explained (ECF No. 12, PageID #: 208). With respect to Claimant's social limitations, Dr. Delcour stated that Claimant can engage in minimal superficial interaction with coworkers and supervisors. (ECF No. 12, PageID #: 208). With respect to Claimant's ability to adapt or manage himself, Dr. Delcour explained that Claimant retains the ability to perform duties which are routine and predictable. (ECF No. 12, PageID #: 208).

The ALJ gave these opinions great weight and explained that "they are supported by and consistent with the evidence of record as a whole." (ECF No. 12, PageID #: 100).

### 2. Consultative Examiner – Dr. Brian Griffiths, Psy.D.

The ALJ summarized the consultative examiner's findings as follows:

> With regard to the four broad areas of work-related mental functioning, Dr. Griffiths indicated the claimant understood and followed simple directions, but performed marginally on short-term memory testing (15F). He noted the claimant was able to follow the conversation, but had difficulty performing tasks requiring attention and concentration, and that he demonstrated an adequate pace, but may have problems keeping up with others. He observed that the claimant interacted appropriately, yet reported social withdrawal. He indicated that stressful situations would increase the claimant's symptoms and probably cause him to respond to workplace stressors through emotional rather than cognitive channels. Dr. Griffiths also completed a form indicating the claimant has mild limitations in understanding, remembering and carrying out simple instructions and making judgments on simple work-related decisions, but marked limitations in understanding, remembering and carrying out complex instructions

and making complex decisions; moderate limitations in interacting appropriately with the public, supervisors and coworkers; and a marked limitation in responding appropriately to usual work situations and changes in a routine work setting. He noted the claimant has impaired attention and concentration, and decreased task persistence and pace. (Id.).

(ECF No. 12, PageID #: 99-100). The ALJ gave Dr. Griffiths's opinion great weight overall but further explained:

His opinion that the claimant has a marked limitation in responding to workplace stressors and changes has been fully considered; however, the other evidence of record, including the claimant's activities discussed at Finding 3, is more indicative of a mild limitation in the ability to adapt and manage himself. Moreover, there is little objective information or observations described in the body of Dr. Griffiths's report to suggest a marked limitation. Nevertheless, the undersigned has assessed a moderate rather than mild limitation in this area, in consideration of Dr. Griffiths's opinion. This limitation is accommodated by a restriction to routine, static job duties in a stable, predictable work setting, with few, very infrequent changes that are adequately and easily explained. The restrictions on work complexity, pace and interpersonal interactions in the assessed residual functional capacity also lessen the claimant's exposure to stress. The limitations in understanding, remembering and applying information, interacting with others and concentrating, persisting and maintaining pace described by Dr. Griffiths are also accommodated by these restrictions.

(ECF No. 12, PageID #:100).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has the following severe impairments: obesity; anxiety; depression; a learning disability; mild asthma; metatarsalgia, bilateral feet; and diabetes mellitus II (20 CFR 416.920(c)).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: He can occasionally climb

8

ramps and stairs, never climb ladders ropes or scaffolds. He is limited to no foot controls with the left lower extremity. He is limited to frequent pushing or pulling with the left non-dominant upper extremity. He can never work around hazards, such as unprotected heights or moving dangerous mechanical parts. He can never operate a motor vehicle, and can occasionally work outdoors in the weather, in conditions of humidity and wetness, in conditions of concentrated dust, odors, fumes, and other pulmonary irritants, in conditions of extreme heat or cold, and in conditions where vibrations are present. He is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. He is limited to simple work-related decisions. He can respond appropriately to occasional interaction with supervisors, coworkers, and is to have no contact with the general public. He is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur very infrequently, and be adequately and easily explained. He is limited to no tandem work. He is limited to jobs that do not require any reading of cursive writing.

5. The claimant is capable of performing his past relevant work as a dishwasher (Dictionary of Occupational Titles (DOT) 318.687-010) and a custodian (DOT 389.683-010). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

10

## C. Discussion

Claimant raises one issue on appeal. Within that issue, Claimant raises two arguments: that the ALJ failed to properly account for the limitations articulated by the state agency psychologists; and that the ALJ failed to properly consider the opinions of the consultative psychological examiner.

### 1. The ALJ properly accounted for the limitations articulated by the State Agency reviewing psychologists.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 404.1527(d)(2). An ALJ is not required to discuss every piece of evidence in the record to support her decision. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (citing *Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004)). Even when assigning pieces of evidence significant weight, the ALJ does not have to adopt any RFC determinations verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). However, when the RFC conflicts with an expert's opinion, an ALJ must explain why he did not include the limitations from an opinion of a medical source in his determination of the claimant's RFC. *Id.* (citing *Fleischer v. Astrue*, 774 F.Supp.2d 875, 881 (N.D. Ohio 2011). "[I]t is only necessary that the ALJ's explanation, in the context of the decision as a whole, afford an opportunity for meaningful

review so that the reviewing court can ensure that the decision is supported by substantial evidence." *Moscorelli*, 2016 WL 4486851 at *4 (citing *Miller v. Soc. Sec. Admin.*, Civil No. 3:14–2274, 2015 WL 4394800, at *7 (M.D. Tenn. July 16, 2015) ("Although Plaintiff is correct that the ALJ did not explicitly state Plaintiff's mental limitations in a concise sentence within her RFC determination...the entirety of the ALJ's decision and the hearing record show that she considered Plaintiff's mental limitations in determining her RFC."); *cf. Thompson v. Comm'r of Soc. Sec. Admin.*, No. 1:12–CV–2372, 2014 WL 356974, at *4 (N.D. Ohio Jan. 31, 2014) (recommending remand where ALJ failed to explain why he did not accept quota limitations and the "remainder of the ALJ's opinion d[id] not provide sufficient insight as to why the ALJ discounted the limitation[.]").

State agency reviewing psychologists Dr. Tishler and Dr. Delcour opined that Claimant should be limited to superficial interaction with others. (ECF No. 12, PageID #: 194, 208). Claimant argues that despite giving these psychologists great weight, the ALJ failed to include a limitation for superficial interaction. The Commissioner argues that the ALJ included the superficial interaction limitation by limiting Claimant to "no tandem work." (ECF No. 16 at 4). Additionally, the Commissioner argues that even if the ALJ declined to accommodate the state agency psychologists' superficial interaction limitation, the ALJ substantially accommodated it by limiting Claimant to occasional interaction. (ECF No. 16 at 5 (citing *Reeves*, 618 Fed. App'x. at 275)).

The Court agrees that the ALJ included Dr. Tishler's and Dr. Delcour's superficial interaction limitation in the RFC by including a limitation to "no tandem work". The ALJ found Claimant's mental residual functional capacity was as follows:

> He is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly

> line work. He is limited to simple work-related decisions. He can
> respond appropriately to occasional interaction with supervisors,
> coworkers, and is to have no contact with the general public. He is
> limited to tolerating few changes in the work setting, defined as
> routine job duties that remain static and are performed in a stable,
> predictable work setting. Any necessary changes need to occur
> very infrequently, and be adequately and easily explained. He is
> limited to no tandem work. He is limited to jobs that do not require
> any reading or cursive writing.

(ECF No. 12, PageID #: 94). The State Agency psychologists determined Claimant was limited

to superficial social limitations, while the ALJ restricted Claimant to "occasional interaction with

supervisors, coworkers, and [ ] no contact with the general public." (ECF No. 12, PageID #: 94).

Additionally, the ALJ limited Claimant to "no tandem work." (ECF No. 12, PageID #: 94). The

ALJ's restrictions did not permit greater frequency of interpersonal contact than the State agency

psychologists. For the general public, the ALJ provided a more restrictive RFC than the

restrictions indicated by the State Agency psychologists when he limited Claimant to "no

contact". Further, the ALJ limited Claimant to "occasional" interaction with "no tandem work"

with his supervisors and coworkers. Tandem tasks "logically require more than superficial

interpersonal contact. This is a restriction on the quality of interpersonal contact." *Collins v.

Comm'r of Soc. Sec.*, No. 3:17 CV 2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018),

report and recommendation adopted, No. 3:17-CV-2059, 2019 WL 1409535 (N.D. Ohio Mar.

28, 2019). Here, since the ALJ limited Claimant to "no tandem work", such a limitation prevents

him from working alongside coworkers and supervisors. It logically follows then that the only

interaction that Claimant would have with his coworkers and supervisors would be superficial.

The ALJ has no obligation to adopt the limitations of a non-examining source verbatim,

even when assigning an opinion great weight. *Reeves*, 618 F. App'x at 275. Here, the ALJ

accommodated the State Agency reviewing psychologists' opinions' limitation to superficial

interaction when the ALJ limited Claimant to "no tandem work" and there is not an inconsistency in the ALJ's opinion. Accordingly, there is no error here.

### 2. The ALJ properly considered the opinions the psychological consultant.

Under the treating source rule,[2] an ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley* v. *Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (eff. to July 31, 2006))). As noted previously, however, Dr. Griffiths was not a treating source. Consultative examiners, such Dr. Griffiths, are "other medical sources", requiring the ALJ to consider several factors when determining the weight to give the opinions. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-376 (6th Cir. 2013). These factors include the length and nature of the relationship, evidence that the physician offered in support of his or her opinion, whether the opinion is consistent with the record as a whole, whether the physician was practicing in his or her specialty, and other factors such as the sources familiarity with claimant's history and record. *Id*.; 20 C.F.R. § 404.1527(c). The ALJ is not obligated to explain every omitted restriction from a non-treating physician's opinion. *See Martin v. Comm'r of Soc. Sec.,* 658 F. App'x 255, 259 (6th Cir. 2016) ("Martin protests the ALJ's lack of explanation as to why Martin's marked impairment in interacting with the general public—as found by Dr. Joslin—and his moderate to marked impairment in his ability to sustain concentration—as found by Dr. Rutledge—were not explicitly incorporated into Martin's RFC.

---

[2] The regulations for handling treating source evidence have been revised for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.927. Claimant filed his applications before the revision took effect.

But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions."). All that was required was for the ALJ to "say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citation and internal quotations omitted). The ALJ did that here.

The ALJ gave Dr. Griffiths's opinion "great weight overall," but discounted his opinion that Claimant had a marked limitation in responding to workplace stressors and changes. The ALJ explained:

> the other evidence of record, including the claimant's activities discussed at Finding 3, is more indicative of a mild limitation in the ability to adapt and manage himself. Moreover, there is little objective information or observations described in the body of Dr. Griffiths's report to suggest a marked limitation. Nevertheless, the undersigned has assessed a moderate rather than mild limitation in this area, in consideration of Dr. Griffiths's opinion. This limitation is accommodated by a restriction to routine, static job duties in a stable, predictable work setting, with few, very infrequent changes that are adequately and easily explained. The restrictions on work complexity, pace and interpersonal interactions in the assessed residual functional capacity also lessen the claimant's exposure to stress.

(ECF No. 12, PageID #: 100). At Finding 3, the ALJ specifically addressed Claimant's limitations in his ability to adapt. The ALJ explained:

> [Claimant] is able to cook and do household chores, and can use a calculator and a cellphone (4F/15; 8F/2; and testimony). He testified that he has difficulty doing laundry, yet he identified this as one of his skills to his mental health treatment provider, in addition to playing cards, gardening, gaming and caring for animals (4F/12). He testified that he needs reminders to perform his personal care and take his own medications, but the record reflects that he takes care of his ill mother and manages her medications (4F/12; 8F/5; 17F). The claimant also testified that he cannot drive, but there is no indication he is unable to use public transportation. He reported that his brother helps him shop and manages his money (15F, and testimony), but the consultative

15

> psychological examiner indicated he could probably manage his own funds, despite his weak math skills (15F). The undersigned has considered the examiner's opinion that stressful situations would increase the claimant's symptoms and "probably" cause him to respond to workplace stressors through emotional rather than cognitive channels (15F), but this was presented in speculative terms. The examiner concluded the claimant has a marked limitation in [ ] responding appropriately to usual work situations and changes in a routine work setting (Id.). However, the level of daily activity describe above, along with these contradictions in the evidence, indicates the claimant's limitation is no more than moderate.

(ECF No. 12, PageID #: 93-94).

Here, the ALJ discussed several of the factors outlined in 20 C.F.R. § 404.1527(c): the length and nature of the relationship (ECF No. 12, PageID #: 99 (referencing that Dr. Griffiths examined Claimant during a post-hearing consultative psychological examination)); evidence that Dr. Griffiths offered in support of his opinion (ECF No. 12, PageID #: 100 ("there is little objective information or observations described in the body of Dr. Griffiths's report to suggest a marked limitation")); and whether the opinion is consistent with the record as a whole (ECF No. 12, PageID #: 100 ("the other evidence of record, including the claimant's activities discussed at Finding 3, is more indicative of a mild limitation in the ability to adapt and manage himself")). When considering the record as a whole, the ALJ found that Claimant was moderately limited in his ability to adapt.

Claimant cites to various parts of the record which could support Dr. Griffiths's opinion that Claimant was markedly limited. (*See* ECF No. 13 at 13). He does not contest the evidence cited by the ALJ, however. In other words, Claimant's argument is about the weight of the evidence, not that the ALJ's decision was not supported by substantial evidence. If substantial evidence supports the ALJ's decision, the decision must stand even if the evidence could support an opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Her*

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-390 (6th Cir. 1999)(citation omitted).

Accordingly, the ALJ's explanation includes "enough to allow the appellate court to trace the path of his reasoning." *Stacey*, 451 F. App'x at 519 (6th Cir. 2011). There is no error here.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: July 9, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).